Robert C. GILLIARD, Jr.,
Plaintiff-Appellant,

v.

Gene A. SCROGGY, Commissioner, Mississippi Department of Corrections; Donald A. Cabana, Warden, Mississippi State Penitentiary, and State of Mississippi, Defendants-Appellees.

No. 87–4377.

United States Court of Appeals,
Fifth Circuit.

June 14, 1988.

Rehearing Denied July 12, 1988.

Lionel R. Barrett, Jr., Nashville, Tenn., for plaintiff-appellant.

Marvin L. White, Jr., and Donald G. Barlow, Asst. Attys. Gen., Edwin Lloyd Pittman, Atty. Gen., Jackson, Miss., for defendants-appellees.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Robert C. Gilliard, a death-sentenced Mississippi prisoner, appeals the denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254, contending that: (1) his guilty plea hearing was constitutionally infirm; (2) he was denied effective assistance of counsel; and (3) his sentencing hearing was tainted by the prosecutor's remarks about parole eligibility relating to a sentence of life imprisonment. Finding no error of constitutional proportions, we affirm.

## BACKGROUND

On August 22, 1981, during the course of an armed robbery of the Best Chance Package Liquor Store in Laurel, Mississippi, Gilliard shot and killed the owner, Grady Chance, with a shotgun blast to the chest. Gilliard was apprehended and indicted for capital murder.[1] Counsel was appointed and in the course of his trial preparation he learned of the extent of the state's evidence. Chance's wife had witnessed the murder and had given police a general description of Gilliard, later identifying him; Warren Seals, an accomplice, informed police that Gilliard had entered and exited the liquor store carrying the shotgun; and Gil-

---

1. The indictment read in pertinent part:

The Grand Jurors of the State of Mississippi, ... present that ROBERT C. GILLIARD, JR. and EDWIN T. DARBY in conjunction with each other on or about the 27 day of August 1981 in the County and District aforesaid did unlawfully, wilfully, and feloniously, with malice aforethought, kill and murder one GRADY CHANCE, a human being, while engaged in commission of the crime of robbery, upon him, in violation of Section 97–3–19(2)(e) of the Mississippi Code of 1972, as Amended.

liard made an inculpatory statement and had helped the authorities to find the shotgun in a creek where he had attempted to dispose of it.

Counsel concluded that Gilliard would have a better chance of avoiding the death sentence if he pleaded guilty to the offense, demonstrated remorse, and effectively threw himself on the mercy of the jury at the sentencing stage.[2] Gilliard and his counsel discussed this course on more than one occasion, including a meeting in which three of Gilliard's sisters participated.

Gilliard entered a plea of guilty, and in a lengthy colloquy during the plea acceptance hearing answered all questions posed by the trial judge, informing the court that he entered his plea knowingly and voluntarily. The court accepted the plea as such and the case proceeded to the sentencing phase. Evidence was adduced, closing arguments of counsel were made and the jury was charged. Following deliberations the jury returned a verdict of death, finding four aggravating factors: (1) the murder was committed during the course of a robbery; (2) the murder was committed for pecuniary gain; (3) the murder was done in an especially heinous, atrocious, or cruel manner; and (4) Gilliard was previously convicted of a felony involving the use or threat of violence to a person.

The Supreme Court of Mississippi affirmed the conviction and sentence. *Gilliard v. State*, 428 So.2d 576 (Miss.1983). The Supreme Court of the United States denied certiorari. *Gilliard v. Mississippi*, 464 U.S. 867, 104 S.Ct. 40, 78 L.Ed.2d 179 (1983).

Gilliard then secured a writ of error *coram nobis* from the Supreme Court of Mississippi which directed an evidentiary hearing on the constitutionality of Gilliard's guilty plea, and whether he had received effective assistance of counsel. The trial judge conducted the hearing and denied collateral relief. The Supreme Court of Mississippi affirmed. *Gilliard v. State*, 462 So.2d 710 (Miss.1985).

With state remedies exhausted Gilliard filed the instant petition. Following a hearing the district court denied habeas relief but granted a certificate of probable cause. Gilliard appeals.

## ANALYSIS

### A. *The guilty plea*

Gilliard challenges the validity of his guilty plea, arguing that the state trial judge did not adequately ascertain that he understood the charges and the consequences of his actions. Due process fundamentally requires that such be done in every criminal case, with, if possible, an added emphasis in capital cases.

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969). "The seriousness of guilty pleas thereby mandate that they 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances.'" *Grantling v. Balkcom*, 632 F.2d 1261, 1264 (5th Cir.1980) (*quoting Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970)). To satisfy due process, the state trial judge must, at a minimum, inform the defendant of the critical elements of the crime to ensure that he receives "'real notice of the true nature of the charge against him.'" *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976) (*quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)).

Gilliard contends that he did not receive "real notice of the true charge

---

**2.** At the time of Gilliard's trial in October 1981, relying on *Coleman v. State*, 378 So.2d 640 (Miss.1979), counsel and other members of the Mississippi defense bar apparently shared the view that if a defendant pleaded guilty, evidence not relating to one of the statutory aggravating circumstances could be successfully objected to. The record reflects repeated relevancy objections by trial counsel during the sentencing hearing; some were sustained. This defense strategy persisted until the decision in *Evans v. State*, 422 So.2d 737 (Miss.1982).

against him" because of the following colloquy at his plea hearing:

Q You are telling the Court that you unlawfully killed Grady Chance?

A Yes, sir.

Q You are telling the Court that you wilfully killed Grady Chance?

A No, sir.

Q You are not telling us that you did wilfully do it?

* * * (Conference Between Defendant and Public Defender)

A Oh, yes, sir.

Q You are telling the Court that you feloniously killed him, with malice aforethought?

A Yes, sir.

Q You are also telling the Court that this was done—that this killing occurred while you were engaged in the commission of the crime of robbery?

A Yes, sir.

We attach the entirety of the plea allocution as an Appendix to this opinion.

Gilliard contends that the inconsistent answers that he gave to the willfulness inquiry obliged the trial judge to delve much further into his understanding about the plea and what his counsel may have advised him about the plea and the planned defense. We are not persuaded, but are convinced that a fair reading of the entirety of the exchanges and the advisories by the state trial judge, chronicled in the Appendix hereto, reflects that Gilliard entered his guilty plea freely, knowingly, and voluntarily.

B. *Ineffective assistance of counsel*

Gilliard advances nine instances of errors or deficiencies of his trial counsel which, he contends, separately and cumulatively rendered the performance of his counsel constitutionally infirm. We resolve this sixth amendment claim by applying the demanding standard announced by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Two basic requirements were established:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Moreover, the Supreme Court buttressed these basic requirements with "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d 694–95 (citations omitted). The *Strickland* Court further taught that when a defendant challenges a death sentence he proves prejudice only if the assigned error of counsel raises a "reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.,* 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. Against this backdrop we examine the assigned errors.

1. Counsel's advice to enter a plea of guilty.

■ Gilliard maintains that the advice to enter a guilty plea was constitutionally deficient because when he pleaded guilty to willfully killing Chance, his defense that the shooting was an accident was prejudiced to the point of forfeiture. This argument has an initial appeal which fades upon closer examination.

At the hearing in state court on his application for writ of error *coram nobis*, Gilliard testified that his attorney advised him to plead guilty so that at the sentencing stage he could show that he had admitted his guilt, demonstrate remorse, and throw himself on the mercy of the jury. It appears that the advice was part of the overall trial strategy which seemed most promising to counsel. The strategy is made manifest by the record and a review of the defense options available under Mississippi law.[3]

The indictment against Gilliard complied with the statute; it contained language allowed by Miss.Code Ann. § 99–7–37. *See* note 3, *supra.* Gilliard could not mount a successful challenge to the indictment because the statute allowed for the inclusion of the language about willful killing with malice aforethought. Thus, Gilliard could choose between only two avenues of defense: plead not guilty to the indictment and face a full trial; or plead guilty to the indictment and face limited evidence in a sentencing hearing with an opportunity to trade on his acceptance of his guilt and his remorse.[4]

Facing these choices, counsel had to make a judgment call on which avenue would best serve his client's interest. We do not evaluate that call with the inevitable 20/20 visual acuity of hindsight, but do so, as best we can assimilate, from the vantage point of counsel at that time. Counsel was aware of the overwhelming evidence against Gilliard. An *in limine* motion to suppress certain evidence had been unsuccessful. The jury would hear all of the evidence, including a statement Gilliard gave the police, the details about the shooting and death, including the pain and suffering of the victim as he died from the shotgun blast to the chest from close quarters. To this could be added Gilliard's version of events.

Considering the difficult choice faced by Gilliard and his counsel, we are not prepared to say that the advice to plead guilty was deficient when weighed on the *Strickland* scale. The advice represented a part of an acceptable defense strategy.

2. Closing argument.

■ Gilliard complains that his attorney erred in mentioning a 30–year sentence al-

---

**3.** The indictment cites § 97–3–19(2)(e) of the Mississippi Code of 1972, the capital murder statute for homicides committed during the perpetration of certain felonies.

Section 97–3–19 provides:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

\* \* \* \* \* \*

(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies;
The indictment contains more than the statute requires for a charge of capital felony murder. In that regard, we note that Mississippi law allows an indictment to contain dual theories of capital murder. Section 99–7–37 of the Mississippi Code of 1972, provides:
In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully, and of his

malice aforethought, kill and murder the deceased. And it·shall be sufficient, in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased, concluding in all cases as required by the constitution of this state.
This section does not differentiate premeditated homicides from felony homicides. In a case involving a homicide that resulted from the commission of an arson, the Mississippi Supreme Court sanctioned indictments in felony murder cases that contained charges for both premeditated and felony capital murder. *Sessum v. State,* 221 So.2d 368 (Miss.1969). The court also found that an indictment that set out alternative theories of capital murder would warrant alternative jury instructions on the respective theories of capital murder. *Id.* at 370.

**4.** In its instructions to the jury the trial court listed these mitigating circumstances which the jury could consider: (1) Gilliard's age at the time of the crime; (2) his level of intelligence; (3) that he had pled guilty, admitted his guilt, and had expressed remorse, sorrow, and repentance; (4) any favorable character traits or his life history; (5) whether he is incorrigible; or (6) any other aspect of his character, life, or record, or any circumstance brought out in the hearing that might be mitigating.

ready assessed which, if he received a life sentence, would mean life plus 30 years. This opened the door for the prosecutor to explain what a life sentence really means in years of imprisonment under Mississippi law.[5]

Gilliard argues that his counsel could not have had a reasonable basis for giving the state an opportunity to present such striking information about the practical effect of a sentence of life imprisonment. We agree and conclude that Gilliard has overcome *Strickland's* strong presumption that counsel's conduct should be considered trial strategy. At first blush counsel's remarks might seem a part of the strategy to appeal to the jury's mercy in the hope that they would return a life sentence. But upon closer examination it is apparent that the remarks were inappropriate because they invited a chilling response by the prosecutor concerning parole eligibility. Counsel's remarks were not necessary, and in making them counsel performed inadequately. We must now determine whether the remarks were so prejudicial as to require a rejection of the verdict. We conclude not.

The error is prejudicial only if we find a reasonable probability that, absent the error, the jury would have found that the balancing of aggravating and mitigating factors did not warrant a sentence of death. In light of the unanimous finding of the four aggravating circumstances, none of which were affected by the parole comments, we cannot reach the conclusion that there is a reasonable probability that

the jury would have determined to assess a penalty of life imprisonment. Accordingly, this complaint against counsel does not meet the rigid *Strickland* test for prejudice.

**3, 4, & 5. Preliminary hearing, change of venue and individual voir dire.**

■ Gilliard contends that his attorney's performance was deficient because he failed to seek a preliminary hearing or a change of venue, and failed to conduct individually sequestered voir dire. The objections are without merit; there is neither demonstration nor suggestion of prejudice.

**6. Systematic exclusion of Blacks.**

■ After the trial court empaneled the jury, Gilliard's defense counsel moved for a mistrial because the state had used eight peremptory challenges, all on black veniremen. Counsel asserted that the empaneled jury resulted from a systematic exclusion of blacks from juries in violation of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Counsel did not support this motion with evidence of the systematic exclusion of blacks in other cases. This failure, Gilliard now asserts, demonstrates ineffective assistance. Gilliard offers no proof that such evidence existed and that his trial counsel could have made it available to the court. Absent such evidence this claimed deficiency cannot be assessed.

---

**5.** Gilliard complains of the following remarks that his attorney made in closing:

> He doesn't need to be out, and the only thing that I can say is that Robert Gilliard ought to be in the state penitentiary. He is already going there for thirty years, and what you are to decide is whether or not he is going to get those thirty years, plus life, or if at sometime before those thirty years, he is going to be executed.
>
> \*    \*    \*    \*    \*    \*
>
> I don't believe he will ever be a danger to anyone again. I don't mean he wouldn't be a danger if we let him walk out on the street because he would probably start drinking again and fall in with other people like Warren Seals, but that's not where he is going, if you come back into the courtroom and inflict a sentence of life imprisonment. We can

> remove him from society without inflicting the death penalty in this case.
> I am glad to know that in addition to a life sentence that he will have thirty years too, because he won't be around, and the only question is whether or not he ought to suffer death.

When the district attorney made his argument he stated the following:

> Speaking of how long things go—about the penitentiary. I think—don't believe for a second that Mr. Parrish is telling you that 'well he will get life' and then I guess he is wanting you to believe that after he dies they are going to keep him up here thirty more years. It doesn't work like that. About how long you are at the penitentiary, and he knows as well as I do, life is ten years and you are eligible for parole.

### 7. Enmund v. Florida.

■ Gilliard reads *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), to hold that the death penalty is inappropriate in a case where a person did not intend to kill during the course of a felony resulting in a victim's death. Gilliard relies on this reading to urge that his counsel was deficient in not anticipating *Enmund* and in advising Gilliard to plead guilty to willful murder. Gilliard misreads *Enmund;* it allows for the imposition of the death penalty where a defendant either kills, attempts to kill, intends to kill, or contemplates that lethal force will be used in a felony. *Enmund,* 458 U.S. at 798, 102 S.Ct. at 3377, 73 L.Ed.2d at 1152. *See also Tison v. Arizona,* 481 U.S. ——, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (adding an additional category—reckless indifference to human life). *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). This claim founders.

### 8 & 9. Opening statement and deal made by accomplice.

■ Neither of these contentions bears merit. Gilliard's counsel chose not to make an opening statement. That is the essence of a strategic choice. In addition, no prejudice is demonstrated. Further, Gilliard complains that counsel failed to inform the jury that Seals, the accomplice who testified against Gilliard, had reached a plea bargain with the state. The trial judge rebuffed counsel's attempt to get this matter before the jury and counsel did not persist. That may have been an oversight or it may have been trial strategy. In either instance, we perceive no prejudice. The prosecutor mentioned the "deal" with Seals in his closing argument. The jurors were aware of it when they retired to deliberate.

### C. The Prosecutor's Improper Closing Argument

■ Gilliard claims that the prosecutor's remarks in closing argument, mentioning parole eligibility, were so prejudicial that they require a new sentencing hearing. Gilliard first argues that the

prosecutor improperly interjected Gilliard's potential future dangerousness, thereby presenting an aggravating circumstance not explicitly listed by the Mississippi capital sentencing statute. Miss.Code Ann. § 99–19–101(5).

We do not agree that the prosecutor's introduction of future dangerousness went beyond the capital sentencing statute. First, defense counsel introduced Gilliard's potential future dangerousness. Second, the Mississippi statute implicitly poses the future dangerousness inquiry when the jury is asked to determine whether the defendant was convicted previously of a felony involving the use or threat of violence to a person. Miss.Code Ann. § 99–19–101(5)(b). Thus, the invited response by the prosecutor did not introduce, anew or impermissibly, the potential of future dangerousness. Moreover, as we discussed above, the reference did not prejudice Gilliard to the point that, absent the remark, there would be a reasonable probability that the jury would have reached a different outcome.

Gilliard complains further that the prosecutor's remarks about parole were inaccurate, misleading, and incomplete. As such, Gilliard contends that the remarks violated the teachings of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Gilliard correctly notes that at a minimum *Caldwell* requires prosecutors to present accurate and non-misleading information about post-sentencing events and review, so that jurors will not be tempted to mete out the death penalty in an arbitrary or capricious manner. *Caldwell,* 472 U.S. at 343, 105 S.Ct. at 2647, 86 L.Ed.2d at 248–49 (O'Connor, J., concurring) (*citing California v. Ramos,* 463 U.S. 992, 999, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171, 1179–80).

We agree that *Caldwell* directs prosecutors to provide accurate and non-misleading information. We are not persuaded, however, that in this case the prosecutor's information was inaccurate or misleading. The prosecutor said "life is ten years and you are then eligible for parole." This statement, while obviously not a full expla-

nation of Mississippi's system of parole, is an accurate thumbnail statement of the law, absent evidence of two or more prior felony convictions. Miss.Code Ann. § 47–7–3; *cf.* Miss.Code Ann. § 99–19–81 (Mississippi's habitual offender sentencing statute). We cannot conclude that the remarks created an unacceptable risk that the jury would mete out the death penalty arbitrarily or capriciously. Gilliard is not entitled to a new sentencing hearing.

Finding no error that rises to constitutional proportions, the district court's denial of Gilliard's application for writ of habeas corpus is AFFIRMED.

## APPENDIX

THE COURT:

All right, you are Robert Claude Gilliard, Jr.?

THE DEFENDANT:

A. Yes, sir.

THE COURT:

Q. You have heard the announcement made by your attorney.

A. Yes, sir.

Q. That you desire to change your plea from not guilty to guilty?

A. Yes, sir.

MR. PARRISH:

If it please the Court, he has not entered a plea himself.

(Plea of Guilty Entered During Voir Dire)

THE COURT:

Q. That's correct. I believe in this case you previously declined to enter a plea and the Court entered a not guilty plea for you, and you do remember, don't you?

THE DEFENDANT:

A. Yes, sir.

Q. Your attorney is at the present time announcing to the Court that you desire to change your—to make a plea of guilty and enter a plea of guilty in this case at this time.

A. Yes, sir.

Q. Is that your plea?

A. Yes, sir.

Q. Before the Court can accept your plea of guilty it will be necessary that the Court ask you some additional questions which must be done outside the presence of the jury in this case, if that is agreeable with your attorney, and you.

Is that agreeable for that to be taken up outside the presence of the jury?

A. Yes, sir.

Q. Is it your desire that it be taken up outside the presence of the jury?

A. Yes, sir.

MR. SMITH:

May Mr. Parrish and I approach the bench?

THE COURT:

Yes, sir.

.* * * * * *

THE COURT:

Q. Are you ready to proceed on this motion?

MR. PARRISH:

A. Yes, sir.

THE COURT:

All right, come around.

(DEFENDANT AND HIS COUNSEL APPROACH THE BENCH)

THE COURT:

Let the record show that the jury has been excluded from the proceedings that are now taking place, and that the Court will at this time determine whether the plea of guilty entered by the defendant is freely, voluntarily and intelligently entered.

THE COURT:

Q. All right, you are Robert C. Gilliard, Jr.?

THE DEFENDANT:

A. Yes, sir.

Q. I ask you to speak out loudly enough that the Court Reporter can hear your answers.

A. Yes, sir.

Q. How old are you?

A. 37.

Q. How far did you go in school?

A. 11th.

Q. 11th grade?

A. Yes, sir.

Q. Can you read and write?

A. Yes, sir.

Q. Do you know what you are charged with?

A. Yes, sir.

Q. What is it?

A. Armed robbery and murder.

Q. You are charged with capital murder, and the Court will go into that in a little more detail in just a moment, but that's what you are charged with is capital murder in this case.

Do you understand that?

A. Yes, sir.

Q. Have you—you have been in jail, is that right?

A. Yes, sir.

Q. And where have you been in jail?

A. Forrest County Regional Jail.

Q. Forrest County Regional Jail?

A. Yes, sir.

Q. Have you had any alcoholic beverages to drink or any drugs to consume within the last 48 hours?

A. No, sir.

Q. Are you in full control of your mental abilities at this time?

A. Yes, sir.

Q. Do you understand that you are entitled to be tried by a jury of citizens of this county?

A. Yes, sir.

Q. That would be selected by your attorney and the State's attorney?

A. Yes, sir.

Q. Do you understand that?

A. Yes, sir.

Q. That's one of your constitutional rights to be tried by a jury, and that's a right that's guaranteed by the Constitution of this State of you.

When you have a trial you are entitled to be confronted by the State's witnesses, and that means you have the right to see those witnesses here in Court and hear what they have to say by way of testimony about this case against you, and do you understand what that means?

A. Yes, sir.

Q. You also have a right to cross-examine the State's witnesses, and that means you have the right to ask them questions concerning their testimony or any other relevant matter in this case, and do you understand that?

A. Yes, sir.

Q. And you also have the right to produce defense testimony, and that means that you have the right to bring witnesses here to testify in your own behalf, and you have the right to testify yourself, but the State could not force you to testify, and the State could not call you as a witness and cross-examine you, or require you to make any statement whatsoever, and do you understand that?

A. Yes, sir.

Q. In other words, you have the right to remain silent during the entire course of this proceedings or any trial that you had, and do you understand that?

A. Yes, sir.

Q. If you had a trial the State would be required to prove you guilty beyond every reasonable doubt before any sentence could be imposed on you, and do you understand that?

A. Yes, sir.

Q. If you had a trial a jury would be the one who determines whether the State had proven you guilty beyond every reasonable doubt, and do you understand that?

A. Yes, sir.

Q. If you had a trial and were convicted, you would have the right to appeal your case to the Supreme Court, and do you understand that?

A. Yes, sir.

Q. Now, with the exception of that right to appeal which you will have in any event, you give up all those other rights that I have explained to you when you plead guilty, and do you understand that?

A. Yes, sir.

Q. Now, do you understand that even though you plead guilty that there is still a further phase of this case that must be passed upon by a jury?

In other words, a jury must still determine your punishment in this case, and do you understand that?

A. Yes, sir.

Q. Do you realize that when you plead guilty to the crime of capital murder that the Court will then empanel a jury to hear the balance of this case as prescribed by law, and that that jury could fix your punishment at death, and you you understand that?

A. Yes, sir.

Q. The jury could also fix your punishment at life imprisonment, and do you understand that?

A. Yes, sir.

Q. The jury could also certify to the Court that they are unable to agree on punishment in this case, and if the jury did so it would be the duty of the Court to sentence you to life imprisonment, and do you understand that?

A. Yes, sir.

Q. Do you realize that when you plead guilty to this charge now before you, that you are saying to this Court that you did on or about the 27th day of August, 1981 here in the Second District of Jones County, Mississippi, that you did unlawfully, wilfully and feloniously, with malice aforethought, kill and murder one Grady Chance, a human being while you were engaged in the commission of the crime of robbery upon him in violation of Section 97-3-19(2)(e) of the Mississippi Code of 1972, as amended?

Do you realize that's what you are telling the Court?

A. Yes, sir.

Q. Before the Court will accept your plea of guilty the Court must be absolutely satisfied that you understand what you pleading guilty to.

I have read what the indictment charges you with, and you said that you understood that, but I want to fully understand that you understand each part of it.

You will be telling this Court that this crime occurred on the 27th day of August, 1981; is that what you are telling the Court?

A. Yes, sir.

Q. Are you telling the Court that this happened here in the Second District of Jones County, Mississippi?

A. Yes Sir.

Q. You are telling the Court that you unlawfully killed Grady Chance?

A. Yes, sir.

Q. You are telling the Court that you wilfully killed Grady Chance?

A. No, sir.

Q. You are not telling us that you did wilfully do it?

(Conference Between Defendant and Public Defender)

A. Oh, yes, sir.

Q. You are telling the Court that you feloniously killed him, with malice aforethought?

A. Yes, sir.

Q. You are also telling the Court that this was done—that this killing occurred while you were engaged in the commission of the crime of robbery?

A. Yes, sir.

Q. Is that what you are telling the Court?

A. Yes, sir.

Q. The purpose of this hearing, as I have stated to you, is to see if you enter your plea freely, voluntarily and intelligently, and I have already explained to you what a jury could do even though you pleaded guilty, and you said you understood that, and is that correct?

A. Yes, sir.

Q. Has anyone offered you anything to get you to plead guilty?

A. No, sir.

Q. Has anyone threatened you, or abused you, or mistreated you that's connected

with this Court, or any law enforcement officer or agency anywhere?

Have you been mistreated?

A. No, sir.

Q. Has any law enforcement officer threatened you, abused you, or mistreated you in any way?

A. No, sir.

Q. You have been transported from the Forrest County Regional Jail Complex to this courthouse on several occasions for the purpose of hearing motions and several things in your case, and do you understand that?

A. Yes, sir.

Q. And that was done by law enforcement officers, wasn't it?

A. Yes, sir.

Q. Has there been any abusive treatment while you were being transported in any way?

A. No, sir.

Q. No threats?

A. No, sir.

Q. No promises made to you in any way?

A. No, sir.

Q. Is there anything about this proceeding that is presently taking place, or any other proceeding in connection with the trial of this case, the balance of the trial of this case, that you want to ask the Court about?

A. No, sir.

THE COURT:

All right, off the record.

* * * (Off the record Conference at Bench)

THE COURT:

Q. All right, the Court accepts your plea of guilty and finds that your plea has been entered freely and voluntarily and intelligently.

I want to ask you one other question that I failed to ask you.

Mr. Ronald Parrish, who is the Public Defender of Jones County, was appointed to represent you in this case.

THE DEFENDANT:

A. Yes, sir.

Q. Are you satisfied with Mr. Parrish's services?

A. Yes, sir.

Q. Do you feel like he has devoted all the time needed to your case, and in talking to you and your witnesses and all parties connected with this case, and are you satisfied with his services in that regard?

A. Yes, sir.

Q. If you are not satisfied with his services as your attorney, now is the time to tell the Court, if you have any dis-satisfaction with him in any way.

A. No, sir.

Q. As previously stated, the Court will accept your plea of guilty and finds it is entered freely, voluntarily and intelligently.