**Joe Angel CORDOVA, Petitioner–Appellant,**

v.

**James A. COLLINS, Director Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 92–2037.

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1992.

Opinion on Petition for Rehearing Jan. 21, 1992.

Joe Margulies, Texas Resource Cntr., Elizabeth Cohen, Austin, Tex., for petitioner-appellant.

Dan Morales, Atty. Gen., Bob Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

On Application for Certificate of
Probable Cause and Motion
for Stay of Execution

Before POLITZ, Chief Judge, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Joe Angel Cordova, now scheduled to be executed on January 22, 1992, brings his first federal petition for a writ of habeas corpus to this court, urging fifteen separate grounds of constitutional error. We agree with the district court that some of his claims are procedurally barred, and the remaining ones are without arguable merit, and, accordingly, deny the certificate of probable cause and motion for stay of execution.

## I. BACKGROUND

On December 15, 1982, Cordova was convicted of the murder of Masel Lee Williams and sentenced to death. On March 11, 1987, nearly five years after Cordova's conviction, the Texas Court of Criminal Appeals affirmed that conviction. A full recital of the facts may be found in the opinion of the Texas Court of Criminal Appeals. *Cordova v. State,* 733 S.W.2d 175 (Tex.Ct. Crim.App.1987). Cordova filed two state habeas petitions, both of which the state courts denied. The state trial court entered extensive findings of fact and conclusions of law in connection with its recommendation to the Texas Court of Criminal Appeals that the second petition for habeas relief be denied. On January 17, 1992, Cordova filed his first federal habeas petition. The federal district judge denied relief on January 19, 1992. Cordova asks this court for a Certificate of Probable Cause to appeal and for a stay of execution.

## II. STANDARDS

After a district court denies a certificate of probable cause to appeal, we lack jurisdiction to decide the appeal unless we first decide to grant one. *May v. Collins,* 948 F.2d 162, 166 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992). We may issue a certificate of probable cause only when the petitioner makes a "'substantial showing of the denial of [a] federal right.'" *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (citations omitted). To make a substantial showing, the petitioner "must demonstrate that the issues are debatable among jurists of reason." *Id.* n. 3. Further, we accord state court findings of fact a presumption of correctness. *See* 28 U.S.C. § 2254(d). In light of these standards, we consider each of Cordova's claims below.

## III. ANALYSIS OF CLAIMS

*Claims 1 and 10*

Cordova contends that the trial court violated his rights under the Eighth

and Fourteenth Amendments by refusing to instruct the jury, as requested by Cordova, to consider his intoxication and any other mitigating factors raised by the evidence in answering the special issues [1] at sentencing. He points to extensive evidence at trial that he was drinking heavily on the night of the offense and that he "gets crazy" when he drinks. Cordova further argues that the trial court's charge failed to inform the jury that they were required by law to consider mitigating evidence presented in the case in carrying out their duties during the sentencing phase of the trial. Specifically, he claims that because the jury instructions used by the trial court are the same ones found to violate the Eighth Amendment in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), his death sentence is constitutionally infirm. Cordova recognizes that his intoxication is relevant to the special issues on deliberateness and future dangerousness, but he argues that those special issues do not exhaust the measures of culpability necessary for a "reasoned moral response" to his character, background, and the circumstances of the offense. He contends that any rational juror who was able to fully consider the evidence of his intoxication could have reasonably concluded that he "did not deserve to be sentenced to death based upon his mitigating evidence." *Penry*, 492 U.S. at 326, 109 S.Ct. at 2950. The district court relied on our *en banc* holding in *Graham v. Collins*, 950 F.2d 1009 (5th Cir.1992), to conclude that these claims lacked merit because, in contrast to the permanent disability of the petitioner in *Penry*, Cordova's voluntary intoxication was a transitory or temporary condition and thus was adequately addressed by the Texas sentencing scheme's special issues.

The case law in this circuit compels the conclusion that Cordova's first and tenth claims for habeas relief are without arguable merit. First, in the interim between the Supreme Court's decision in *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), and *Penry*, we held that evidence of voluntary intoxication can be given full effect by the jury in deciding whether the defendant acted deliberately. *See Kelly v. Lynaugh*, 862 F.2d 1126, 1133 (5th Cir.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989). Any question which *Penry* may have raised about the continued vitality of this holding in *Kelly* has been resolved by the court's *en banc* decision in *Graham*. Under the rationale in *Graham*, voluntary intoxication is not the kind of "uniquely severe permanent handicap[ ] with which the defendant was burdened through no fault of his own" that requires a special instruction to ensure that the mitigating effect of such evidence finds expression in the jury's sentencing decision. *See* 950 F.2d at 1029; *see also Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (holding that the Texas sentencing scheme "clearly assures that all possible relevant information about the defendant will be adduced;" facts presented at trial related that defendant was "22 years of age, had been drinking beer all afternoon" on the day of the offense). In sum, we think that the court's decision in *Graham*, in combination with our earlier holding that the mitigating force of the defendant's intoxication at the time of the offense may be adequately taken into account in answering the special issue on deliberateness, precludes any debate over whether Cordova's jury was able adequately to consider and give full effect to the mitigating evidence of his intoxication in violation of the Eighth and Fourteenth Amendments, as construed in *Penry*.[2]

1. At sentencing, a Texas jury must answer special issues concerning the deliberateness of the defendant's conduct and the future danger the defendant may pose to society. The first special issue requires a finding that "the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result...." Tex.Code Crim.Proc. Ann. art. 37.071(b)(1). The second special issue requires the jury to determine whether "there is

a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex.Code Crim. Proc.Ann. art. 37.071(b)(2).

2. *Graham* also suggests that voluntary intoxication would be covered by "the appropriate general rule, namely that the mitigating force of [a transitory condition] at the time of the offense may be adequately taken into account in

*Claim 2*

■ Cordova's second ground of error alleges that the State failed to disclose materially exculpatory evidence and failed to correct materially false testimony presented by one of its witnesses at trial.[3] Specifically, he contends that the State did not reveal to him that it had agreed to verify the extent and nature of co-defendant Paul Guillory's cooperation at Cordova's trial. Cordova contends that the State concealed this information in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Further, he argues that the State neglected to correct Guillory's statement during trial that he was not testifying in exchange for any anticipated benefit from the State. This failure, he contends, constitutes reversible constitutional error under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). We agree with the district court that Cordova does not present the clear and convincing evidence required to eliminate the presumption of correctness we accord to state factual findings under our review. 28 U.S.C. § 2254(d).

In order to state a *Brady* violation, Cordova must show that (1) the prosecution suppressed evidence that was (2) favorable to the accused and (3) "material to either guilt or punishment." 373 U.S. at 87. Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

Here, the state trial court found that the prosecution did not agree to make any plea agreement or recommendation on behalf of Guillory; rather, it agreed merely to verify the extent and nature of Guillory's cooperation in testifying at Cordova's trial. This information was otherwise available from public sources. Cordova, therefore, fails to demonstrate he was prejudiced by the State's alleged suppression of this information. Moreover, to the extent that Cordova may raise an issue as to the first prong of *Brady*, he does not show that the information is exculpatory or material to his guilt or punishment. Finally, because the State's agreement to verify public information differed in material degree from the significant benefit derived by the witnesses in *Giglio*, 405 U.S. at 153, 92 S.Ct. at 765 (promise to witness that he would not be prosecuted if he cooperated), and *Napue*, 360 U.S. at 266, 79 S.Ct. at 1175 (state promised witness a recommendation for reduction of sentence), we do not find Cordova raises a claim of constitutional dimension. Accordingly, we find this claim without arguable merit.

*Claims 3 and 4*

In these claims, Cordova argues that the trial court violated his constitutional right to an impartial jury by refusing to excuse for cause prospective jurors David Andrew Link and Charles Bair. The state may exclude a juror whose "views would prevent or substantially impair the perform-

---

answering the second special issue," *i.e.*, the issue with respect to future dangerousness. *See* 950 F.2d at 1031.

**3.** Cordova devotes part of his memorandum in support of his application for a certificate of probable cause to a "claim" that the State failed to disclose evidence that it promised another 16–year–old codefendant, Edward Gamino, that it would not try to prosecute him as an adult in exchange for his testimony against Cordova. A footnote in Cordova's memorandum discloses that he did not present this allegation in his original federal habeas petition, but did submit it in a supplement to that petition filed after the State had submitted its answer. The State points out that no motion for leave to file an amendment to the pleadings was submitted to

the district court or granted. The "claim" clearly has not been submitted to the state courts for review.

To support his allegation, Cordova submitted what he describes as a sworn affidavit, signed by Gamino. In actuality, the documentation he provided consists of an unsworn statement of Gamino. To counter the State's motion for summary judgment in the district court, Cordova must raise a genuine issue of fact material to his claim. His unsworn statement, however, does not meet federal evidentiary standards and thus does not constitute evidence adequate to meet the State's motion for summary judgment. Therefore, even if we were prepared to consider Cordova's late-filed allegation as a claim, it is wholly unsupported.

ance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), also emphasized that a trial judge's conclusion as to a prospective juror's "state of mind is based upon determinations of demeanor and credibility," *id.* at 428, 105 S.Ct. at 854, and results in factual findings to be accorded a presumption of correctness under 28 U.S.C. § 2254(d). We concur with the district court's ultimate conclusion that these claims lack arguable merit.

■ Link, who became the twelfth juror in Cordova's trial, explicitly stated in voir dire that he would consider evidence of intoxication as a mitigating circumstance, but did not believe that that factor was entitled to receive much weight. *Cordova v. State*, 733 S.W.2d at 189. However, Link also indicated that he was willing to entertain an argument that he should consider such evidence in mitigation. The record evidence leads us to hold that the trial court's conclusion, affirmed by the Texas Court of Criminal Appeals, that Link was able to follow the law is correct, and Cordova fails to make an arguable constitutional claim on this ground.

■ On direct appeal, the Court of Criminal Appeals found that venire member Bair, after he was excused from service as a juror on the basis of the defense's peremptory strike, made several biased comments to four other prospective jurors who were seated outside the courtroom, including one that he " 'really wanted to fry the guy.' " 733 S.W.2d at 183. Out of an abundance of caution, the trial judge excused the prospective jurors who heard Bair's comments. Cordova relies on *Stockton v. Virginia*, 852 F.2d 740 (4th Cir. 1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), to support his argument that this statement, in effect, rendered Bair retroactively unqualified to serve on a capital jury as a matter of law.

In *Stockton*, the Fourth Circuit granted habeas relief on the ground that a restaurant owner's comment to jurors during a meal break in their sentencing deliberations that he thought "they ought to fry the son of a bitch" instilled a prejudicial element into the deliberations which deprived the petitioner of his constitutional right to a fair and impartial jury. *Id.* at 741, 745. We do not find that *Stockton*, with a markedly different fact pattern, supports Cordova's contention. The trial court's conclusion that Bair could faithfully and impartially follow the court's instructions on the law and his oath as a juror is fairly supported by the record of his examination during voir dire. Because Cordova presents us with no convincing reason to set aside the presumption of correctness accorded to state court factual findings, we find that this claim lacks arguable merit.

*Claim 5*

■ Cordova's fifth claim is somewhat difficult to understand, but we read it to assert that his rights under the Eighth and Fourteenth Amendments were violated by a statutory prohibition against informing jurors of the effect of the failure to agree on a punishment phase issue. The Texas capital sentencing statute provides that the court shall charge the jurors that they may not answer any of the special issues "yes" unless they agree unanimously and they may not answer any issue "no" unless ten or more jurors agree. Tex.Code Crim.Proc. Ann. art. 37.071(d)(1) and (2). Although the statute requires a life sentence to be assessed when jurors are unable to agree on a response to a specific issue, it prohibits the court or the attorneys for the state or the defendant from informing a juror of the effect of the failure to agree on that issue. Tex.Code Crim.Proc.Ann. art. 37.-071(e), (g). We read Cordova's fifth claim to be contending that the instruction given[4] at the punishment phase of his trial led jurors to believe that they could not vote "no" unless ten jurors agreed to vote "no,"

4. Cordova points to the following instruction which was given, without any objection, to the jury in this case: "[i]f ten or more jurors vote

"no" in the jury deliberations as to a special issue, then the answer of the jury is "no" regarding that special issue."

and that a lone juror, who believed that a special issue should be answered "no," rather than voting in accordance with his view of the evidence, would feel compelled to vote in a manner which would allow the jury to return twelve "yes" votes. The instruction given, therefore, violated his Eighth Amendment right to have each juror consider and give effect to his or her conclusion that the evidence does not warrant a sentence of death.

We agree with the State that Cordova seeks to apply *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), a decision announced after his conviction became final. The result that Cordova seeks was not dictated by precedent in existence at the time his conviction became final. We are precluded by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), from reaching that result.

The state courts, presented with Cordova's fifth claim, noted that he had failed to object at trial on this basis and found the claim to be procedurally barred. Cordova fails to demonstrate both cause for his failure and actual prejudice resulting therefrom. *See Murray v. Carrier*, 477 U.S. 478, 494–95, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

*Claim 6*

■ In his sixth claim, Cordova charges that the prosecutor's closing argument purposefully diminished the jury's sense of responsibility in answering the special issues. He claims that the prosecutor impermissibly implied that the jury did not need to consider the effect of affirmative questions to the special issues.[5] Thus, Cordova asserts, the failure to ensure that the jurors knew the import of their decision and exercise their discretion responsibly and reliably at sentencing violated his constitutional rights. We relied on Justice O'Connor's concurring opinion in *Caldwell v.*

*Mississippi*, 472 U.S. 320, 343, 105 S.Ct. 2633, 2647, 86 L.Ed.2d 231 (1985), to hold that "prosecutors [must] present accurate and non-misleading information about post-sentencing events and review, so that jurors will not be tempted to mete out the death penalty in an arbitrary and capricious manner." *Gilliard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). We examine whether Cordova raises an arguable claim under this rule.

By presenting the prosecutor's statements in isolation, Cordova paints a different picture of the underlying thrust of the prosecutor's words than the state court did. After review of the transcript as a whole, the state appellate court concluded that the prosecutor did not misstate the law pertaining to special issues or otherwise make an improper argument. It found that the prosecutor's comments were aimed at discouraging the jury from basing its decision on emotional appeal, as Cordova's counsel had urged. Thus placed in context, we agree with the district court that Cordova provides no reason to question the state court's conclusion. Accordingly, we find this claim without merit.

*Claims 7 and 8*

■ Cordova brings two claims that center on the Texas practice of refusing to instruct capital juries on parole considerations. He contends that this practice constitutes a denial of equal protection under the Fourteenth Amendment because non-capital juries are instructed on parole considerations and no such instructions are given to capital juries. We note that the provision of Texas law to which Cordova refers (Tex.Code Crim.Proc.Ann. art. 37.07) was added in 1985, after Cordova's trial. He further contends that the failure to instruct his jury on parole considerations resulted in arbitrary sentencing in violation

---

5. Cordova contends that the following statements raise this implication:

The jury is not to decide what the punishment should be in this case....

\* \* \* \* \* \*

Again, the jury is not to decide what the punishment should be in this case. They

shouldn't decide whether it is life or death. They should decide did the state prove that the answers to the questions are yes. If not, then they should be answered no. That is the proper deliberations you have taken an oath to follow.

Vol XVII at 8.

of the Eighth Amendment. A review of the state trial court record makes it clear that Cordova did not request a special charge on parole considerations, nor did he object to the trial court's charge. Although these claims were not exhausted in state court, the State waived the requirement of exhaustion of the claims so that they could be considered here; the State urges, however, the absence of a contemporaneous objection. *See McGee v. Estelle,* 722 F.2d 1206, 1211–14 (5th Cir.1984) (*en banc*). The district court rejected these claims on the grounds that they would have been procedurally dismissed by the state courts had they been brought before it. We find that because Cordova failed to object to these alleged errors at trial, his claims would have been procedurally barred had they been presented to the state courts. Tex.Code Crim.Proc.Ann. arts. 36.-14–36.19 (Vernon 1981 & Supp.1992). We would, therefore, decline to address them, see *Carrier,* 477 U.S. at 494–95, 106 S.Ct. at 2649, and his seventh and eighth claims are without arguable merit.

### Claim 9

■ In his ninth claim, Cordova argues that the trial court erroneously admitted into evidence a photograph of the victim's body taken during autopsy. He claims that the admission of this photograph inflamed the jury's sensibilities against him and constituted prejudicial victim impact evidence in violation of the Fifth, Eighth and Fourteenth Amendments.

The state court found that the trial court admitted the photo of the victim's body into evidence "for the purpose of identifying the deceased and also to aid the jury in determining the cause of death." On this basis, it concluded that the trial court properly admitted the photo of the victim's body into evidence. The district court rejected Cordova's argument that the photograph rose to the level of "victim impact evidence" condemned in *Payne v. Tennessee,* 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). *Payne* holds that

> a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blame-

worthiness, it should have before it at sentencing phase evidence of the specific harm caused by the defendant. "[T]he state has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family."

*Id.* at 2608 (quoting *Booth v. Maryland,* 482 U.S. 496, 517, 107 S.Ct. 2529, 2540, 96 L.Ed.2d 440 (1987)). We find that *Payne* is inapposite to this claim, and find no arguable merit to Cordova's claim that his constitutional rights were implicated in any way by the admission of the photograph.

### Claim 11

■ Cordova maintains that the structure of the Texas sentencing statute unconstitutionally precluded his counsel from investigating and presenting mitigating evidence concerning his childhood hardships and abuse, his family's history of alcoholism, and other family problems. Cordova argues that if relevant at all to the special issue questions, such evidence would have supported affirmative findings to both special issues. For this reason, defense counsel made a tactical decision not to present such evidence. The Texas Court of Criminal Appeals has held that "absent a contemporaneous offer of proof or bill of exception detailing what mitigating evidence was TACTICALLY withheld by the [defendant] during trial," it will not consider such evidence in post-conviction proceedings. *Ex parte Goodman,* 816 S.W.2d 383, 386 n. 6 (Tex.Ct.Crim.App.1991). Thus, in Cordova's state habeas action, the state trial court found that Cordova's "chilling" claim was procedurally barred because it is based on evidence not presented at trial. The Court of Criminal Appeals expressly adopted this finding in denying relief. Cordova makes no showing of cause for his failure to bring the claim below and prejudice resulting therefrom. *Carrier,* 477 U.S. at 494–95, 106 S.Ct. at 2649. Nor does he make any claim of actual innocence of

his conviction or sentence. Thus, we cannot reach the merits of this claim.

### Claim 12

 Cordova claims that the Texas sentencing statute violates *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) because the special issues contain unconstitutionally vague terms which fail to narrow the class of persons eligible for the death penalty, and thus result in an arbitrary and capricious imposition of the death penalty. He also contends that Texas' failure to require a limiting instruction to guide the jury in understanding these terms leaves it unconstitutionally vague and standardless.

The state courts found this claim was procedurally barred because Cordova did not preserve the alleged error at trial. Because Cordova fails to show cause and prejudice for his procedural default, we cannot consider its merits. *See Carrier*, 477 U.S. at 494–95, 106 S.Ct. at 2649.

### Claim 13

 Cordova contends that the trial court violated his Sixth Amendment right to an impartial jury by ruling that venire members Kucera, Kruse, and Guest should not be excluded for cause. This claim was raised in Cordova's direct appeal to the Texas Court of Criminal Appeals and rejected in a detailed, careful opinion. We conclude that this claim has no arguable merit.

As noted above, the state may exclude a juror whose "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526. A trial court's determination of a prospective juror's state of mind is a factual issue to which we accord a presumption of correctness. *Witt*, 469 U.S. at 428, 105 S.Ct. at 854. Although all three of these prospective jurors equivocated somewhat during voir dire questioning, the record as a whole does not indicate that the trial court's determination that they could perform their duties in accordance with the court's instructions and their oaths is not entitled to a presumption of correctness.

### Claim 14

 Cordova argues that the trial court erred in refusing to excuse prospective juror Jane Wood Sullivan for cause. During voir dire questioning, Sullivan initially indicated that she believed that if she were selected for a capital jury but found the defendant guilty only of the lesser included offense of murder, she could not consider assessing the statutory minimum sentence of five years to that defendant. The Texas Court of Criminal Appeals read the record as indicating that Sullivan retreated from this position, averring that she would be able to consider the minimum punishment for the lesser included offense of murder. *Cordova v. State*, 733 S.W.2d at 185. Under the *Witt* and *Adams* standards set forth above, we find that Cordova fails to raise a constitutional challenge of arguable merit to the trial court's refusal to exclude venireperson Sullivan.

### Claim 15

 Finally, Cordova claims that the trial court violated his Sixth Amendment right by granting the State's request to excuse for cause venire members Sims, Detorre and Hampton. These venire members all expressed deep-seated conscientious or religious objections to the death penalty. This claim was also raised and disposed of in Cordova's direct criminal appeal. Cordova argues that the trial court erred because none of these prospective jurors made it "unmistakably clear" that she would automatically vote against the imposition of capital punishment. *See Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Cordova's reliance on this passage of *Witherspoon* is misplaced. The Supreme Court explained in *Witt*, 469 U.S. at 424–25, 105 S.Ct. at 852, that *Adams* eased the stringency of showing that exclusion of prospective jurors met constitutional requirements. Applying *Adams* in the context of venire members who voice opposition to the death penalty, *Lockhart v. McCree*, 476 U.S. 162, 178, 106 S.Ct. 1758,

1767, 90 L.Ed.2d 137 (1986), held that a state may remove for cause any prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties at the sentencing phase of the trial. The trial court's determination to exclude a prospective juror is a factual issue subject to a presumption of correctness under 28 U.S.C. § 2254(d). *Witt,* 469 U.S. at 424, 105 S.Ct. at 853.

Upon review of the state court findings, we agree with the Court of Criminal Appeals that the trial court's decision to exclude these jurors for cause complied fully with the constitutional standards set forth above. As a result, we find no arguable merit in this claim.

### IV. CONCLUSION

For the foregoing reasons, we DENY Cordova's application for a Certificate of Probable Cause and DENY his motion for a stay of execution.

Appeal from the United States District Court for the Southern District of Texas, John D. Rainey, Judge.

### ON PETITION FOR REHEARING

Jan. 21, 1992.

PER CURIAM:

The petition for rehearing is correct in its characterization of the effect of 28 U.S.C. § 1746. It is in all other respects factually incorrect. The Gamino claim was not properly presented to the district court; the state was not able to address the claim in its answer to the district court; it was not referred to or specifically addressed by the district court; and it was not presented at all to the state courts. The state has not waived exhaustion or any of the petitioner's other defaults in presenting the claim. The petition for rehearing is DENIED.