221 So.2d 368 (1969)
Cecil Victor SESSUM
v.
STATE of Mississippi.
No. 45174.
Supreme Court of Mississippi.
April 14, 1969.
L. Percy Quinn, Laurel, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
ETHRIDGE, Chief Justice:
Cecil Sessum, appellant, was convicted in the Circuit Court of Forrest County of the murder of Vernon Dahmer and was sentenced to life imprisonment in the state *369 penitentiary. We affirm the judgment of the circuit court.
Dahmer, a Negro, lived with his wife and three children in a rural community out of Hattiesburg. Around two o'clock A.M., on the night of January 10, 1966, the family was asleep in their residence. Dahmer's wife testified that she was awakened by the blowing of a car horn and gunshots coming in the house. She saw that the front part of the house was on fire, heard a window break and saw the living room explode in flames. Dahmer helped his wife and children out of windows in the back of the house, got his shotgun and fired at the attackers, while he tried to hold them off. When the assailants left, both the house and Dahmer's adjoining store were completely destroyed by fire. Dahmer received second degree burns about his arms and face and died the same day. His death was directly caused by thermal injury from burns of the respiratory tract, peripheral vascular collapse or shock, and hypoxea (decrease in oxygen).
T. Webber Rogers, a witness for the State, testified that he had been a member of the White Knights of the Ku Klux Klan. In September 1965 he attended a meeting of this organization. Bowers, the "Imperial Wizard," stated that something had to be done about Vernon Dahmer, and project Numbers 3 and 4 were assigned to the job. These were said to mean a fire bombing and death. Sessum was present and participated in the meeting and discussion of the project. In another meeting at Byrd's farm in December 1965, both Bowers and Sessum brought the subject up again. Bowers complained that they were late in getting the Dahmer project attended to. Sessum was the "Cyclops" of the group. Sessum helped arrange for a "dry run" or reconnaissance for the attack. Rogers said that he and Sessum made that "dry run" and that he quit the Klan shortly thereafter. Billy Roy Pitts, another witness for the State, testified that he was a member of Clavern No. 4 of the White Knights of the Ku Klux Klan, and that Sessum was the "Exalted Cyclops." He attended the meeting on the Byrd farm about the Dahmer project, at which Bowers was the leader. Bowers and Nix encouraged all of the members to get the "old projects taken care of," and the decision was to do Numbers 3 and 4, burning and annihilation, at Vernon Dahmer's place. Sessum was present and participated in the decision. On the night in question Sessum came to Pitts' house, and directed Pitts to get a gun and come with him. A number of Klan members met at Sessum's house and all were armed with shotguns and pistols. Sessum took a number of plastic jugs to his father's gasoline pump and filled them with gasoline.
Eight men then left to accomplish their objective. They were all heavily armed and travelled in two automobiles. Sessum and Pitts were in the same car. Sessum pointed out the store and the house that were to be burned. The men got out of their cars and began shooting rapidly with their shotguns and pistols. Sessum had Smith shoot out the front window of the Dahmer house, and instructed Pitts to guard him while he threw the gasoline in the front window, after jabbing holes in the plastic jugs. Sessum then lighted a gasoline soaked rag on the end of a stick and threw it into the house. This ignited the house in huge flames of fire. They also burned the store.
The arsonists had agreed to leave their lights off until they got away, but when someone in their Ford car turned the headlights on, Smith impulsively shot at it and blew out two of the tires. Later that car was discovered and it was found to be registered to Travis Giles. In the front yard of the Dahmer house officers found a 22-calibre magnum pistol with the handle partly burned from the fire in the grass. Pitts identified that pistol as the one which he had dropped when he was in the Dahmer yard. Sessum did not testify. His defense was an alibi; it was claimed that he was at home that night. The jury rejected Sessum's alibi and accepted the testimony for the State. It was amply justified in doing so.
*370 The indictment, as amended, charged that Sessum "in conjunction with others, on the 10th day of January, 1966; in Forrest County aforesaid: did willfully, unlawfully, feloniously, and of his malice aforethought, kill and murder one Vernon Dahmer * * *" This is the standard form of murder indictment. The State obtained one instruction in those terms, and another which stated:
The Court instructs the Jury for the State that the killing of a human being, without the authority of law, by any means or in any manner, shall be murder when done without any design to effect death, by any person engaged in the commission of the crime of arson, or in any attempt to commit such felony.
Another State's instruction referred to deliberate design and felony murder, and then specifically to the facts, and told the jury that if it believed from the evidence beyond a reasonable doubt that Sessum in company with others, having a common design to burn the Dahmer dwelling for the purpose of committing arson and "while so engaged, either with the formed purpose to kill the deceased, Vernon Dahmer or without any such intent, and as a result of said alleged act of arson the deceased, Vernon Dahmer, died, then the Jury should find the defendant guilty of murder."
Appellant argues that the latter two instructions are in conflict with the prior murder instruction, but we do not agree. They fully comply with the definitions in Code section 2215. Miss. Code 1942 Ann. § 2215 (1956). Moreover, section 2454 Mississippi Code 1942 Annotated (1956) states:
In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased. * * *
In short, the indictment does not have to set forth the manner in which or the means by which the death of deceased was caused. It is sufficient to charge murder in the proper terms, whether it was a premeditated killing or a homicide resulting from the commission of the crime of arson. The State's instructions could properly set forth both theories of murder. Moreover, "any facts that evidence murder or manslaughter may be introduced in evidence." Carrol v. State, 183 Miss. 1, 183 So. 703 (1938); see 41 C.J.S. Homicide § 392c, p. 210 (1944).
The circuit court did not err in refusing to grant appellant a continuance on the ground that his attorney had not had adequate time and opportunity to properly prepare a defense. At the January term, on January 25, 1968, Percy Quinn, counsel for appellant, was present and represented him. On that day he expressly asked the court for a speedy trial. This was approximately one and one-half months prior to the trial. The circuit court advised Quinn that the case would have to be continued until the next term, and by agreement of all parties the case was then set for call on March 4, 1968. However, at that time, Quinn, completely changing his position, advised the court that he did not represent appellant. The court thereupon appointed him to defend appellant and set the case for March 11, 1968. Further, at the trial appellant was ably represented in a defense which was obviously well prepared by both attorney Quinn and another experienced lawyer. Under all of these circumstances, the circuit court was amply justified in denying the motion for a continuance, and certainly we cannot say that any injustice resulted from that denial. See Miss.Code 1942 Ann. § 1520 (1956).
Moreover, the trial court did not err in refusing appellant's request for a continuance on his charge that the Hattiesburg area had been so saturated with publicity unfavorable to appellant that a fair trial would be impossible. The two newspaper *371 articles submitted to this Court as part of the record appear to be straight news releases. There is no other evidence to show any prejudicial pretrial publicity which would justify a continuance. Certainly we cannot say the trial court abused its discretion in denying the motion. Nor is there any evidence to show difficulty in obtaining a qualified jury. Appellant made no motion for a change of venue, which is the usual procedure where an accused thinks he cannot get an impartial jury in a particular county.
Affirmed.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.