IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00664 COA

OTHA LEE HOSKINS A/K/A OTHA

LEE HOSKINS, JR. APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. L. BRELAND HILBURN JR.

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: THOMAS M. FORTNER

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: DEWITT ALLRED III

DISTRICT ATTORNEY: BOBBY DELAUGHTER

NATURE OF THE CASE: CRIMINAL- FELONY

TRIAL COURT DISPOSITION: MURDER: SENTENCED TO SERVE 40 YRS IN MDOC; SENTENCE TO RUN CONSECUTIVE TO ANY OTHER SENTENCES IMPOSED UPON THIS DEFENDANT BY ANY COURT

MOTION FOR REHEARING FILED: 9/22/97

CERTIORARI FILED: 12/1/97

BEFORE THOMAS, P.J., HERRING, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:

Hoskins was convicted in a Hinds County Circuit Court of murder and sentenced to forty years. He appeals, arguing that the trial court erred in instructing the jury, in allowing evidence of his juvenile record, in denying his motion for a mistrial, in excluding the hearsay testimony of an unavailable witness, and in the alternative, in denying his request for a continuance to locate the missing witness. Finding no reversible error, we affirm.

## FACTS

Late the night of June 30, 1994, Wayne Harrison and Melissa Montgomery made several trips in Montgomery's Blazer to a neighborhood in Jackson to buy cocaine. On their third trip, Harrison was shot twice and died. Montgomery testified that she was driving, and they stopped to buy some cocaine. Another car stopped and Hoskins got out of the car and approached the passenger side of the Blazer where Harrison was sitting holding a ten dollar bill. The two struggled for the money and Hoskins shot Harrison in the back twice.

Following his arrest, Hoskins admitted to the police that he shot Harrison but claimed it was accidental. Hoskins later recanted the confession and claimed it was coerced. At trial, he denied shooting Harrison and claimed that someone else shot him.

On April 7, 1995, the jury found Hoskins guilty of murder. He was sentenced to a forty year term in prison.

## DISCUSSION

*I. Jury instruction on capital murder*

Hoskins argues that the trial court erred in giving the jury a capital murder instruction where the defendant was indicted and tried for simple murder, i.e., the intentional killing of another person without justification. He argues that because he was indicted for simple murder, the instruction constructively amended the indictment and elevated the charge to capital murder. For clarity, it needs to be mentioned that the State never sought the death penalty, but the argument is that the jury instruction explained the part of the statute for capital murder and not simple murder. The instruction that Hoskins condemns stated this:

The court instructs the jury that if you believe . . . that

1. Otha Lee Hoskins . . .

2. killed Wayne Harrison by shooting the said Wayne Harrison with a gun,

3. without any design to effect the death of Wayne Harrison, and

4. at the time of the alleged killing, Otha Lee Hoskins, was engaged in the commission of a felony, to-wit: robbery, attempted robbery, sale of a controlled substance or conspiracy to sell a controlled substance, . . . .

then the jury was to find Hoskins guilty of murder.

This *instruction* requires the jury to find that Hoskins shot his victim without a design to kill him, but while committing one of the named felonies, while *indictment* charged Hoskins with an intentional killing without any reference to other felonies. The issue quite simply is whether a killing that occurs during the commission of certain named felonies, is an offense that is raised by an indictment for a wilful killing.

Hoskins argues that a constructive amendment of the indictment was made. A constructive amendment of an indictment occurs when the proof and instructions broaden the elements of the offense charged so that the defendant may have been convicted on a ground not alleged by the grand jury in its indictment. *U.S. v. Miller*, 471 U.S. 130, 142-45 (1985). Hoskins objected at trial to this instruction. He did not label the problem an impermissible "amendment," but the issue was raised using equivalent words.

Mississippi's murder statute is a long, multi-part creation that addresses different categories of murder. Subsection (1) defines deliberate design murder, depraved heart murder, and "felony murder," i.e., a killing that occurs without design, but while committing "any felony" except for those especially heinous and violent felonies that would cause the crime to be punishable as capital murder. Miss. Code Ann. Section 97-3-19(1) (Rev. 1994). Subsection (2) defines the acts that constitute capital murder, i.e., murder for which death is a statutorily available punishment. Miss. Code Ann. Section 97-3-19(2) (Rev. 1994).

The Mississippi Supreme Court has held that an indictment for a willful murder was sufficient to support jury instructions and a conviction for felony murder. *Sessums v. State,* 221 So. 2d 368, (Miss. 1969). The reason for this conclusion is straightforward: a statute requires it.

In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by

which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased. [A similar rule is then described for manslaughter.]

Miss. Code Ann. § 99-7-37 (Rev. 1994). The rationale of the statute was articulated in *Sessums*. Regardless of the various ways in which murder can be committed there is still but one crime. The crime is the killing of another human being. An indictment for a premeditated killing allows the court to grant jury instructions and for felony murder. *Sessums*, 221 So. 2d at 370. It would also allow a conviction for a lesser-included offense such as manslaughter. It would not have allowed a conviction that would have exposed Hoskins to the possibility of a death sentence, since he was not put on notice by the indictment that he had potentially committed a capital crime. Under *Sessums*, however, a killing that occurred during the commission of certain particularly violent crimes for which capital punishment could have been sought, is included within an indictment for simple murder so long as the death penalty is not being requested. The "nature" of the accusation is still murder.

This statute explaining the proper means to indict for murder put Hoskins on notice that even though he was charged with "willfully, unlawfully and feloniously . . . [killing Wayne Harrison] with deliberate design to effect the death of Wayne Harrison," proof of any "manner in which or the means by which the death of the deceased was caused" could be introduced. Miss. Code Ann. § 99-7-37 (Rev. 1994).

*Sessums* allowed a conviction under a "simple murder" indictment for a killing that occurred during the commission of an arson. There is no additional burden on the defendant in requiring him instead to defend against a different enumeration of felonies. In both situations there are crimes contemporaneous with the killing and not mentioned in the indictment, the proof of which will support a murder conviction.

More recently, the supreme court has held that subsections (1)(a) for a willful killing and (1)(b) for depraved heart murder have "coalesced," such that an indictment for a willful killing allows proof and conviction of a depraved heart killing. *Catchings v. State*, 684 So. 2d 591, 599 (Miss. 1996). A distinction was drawn in *Catchings* between this approach and the supreme court's determination regarding similar issues arising under the aggravated assault statute. The court has held that if an indictment charges a purposeful and willful assault, instructions cannot be given nor a conviction had for a reckless assault under conditions manifesting an extreme indifference to human life. *Quick v. State,* 569 So. 2d 1197, 1200 (Miss. 1990). The murder indictment statute, Section 99-7-37, was not mentioned in *Catchings*, but that would be an additional reason permitting the result. Even if depraved heart murder and simple murder had not "coalesced," this statute is notice to defendants as surely as if the indictment itself covered the other alternative methods of committing murder.

Hoskins was indicted, tried, and convicted under Section 97-3-19(1) of the Mississippi Code. The instruction did not permit the jury to convict Hoskins on any ground outside the indictment, and the instruction did not amend the indictment. There was no error in giving this instruction.

II. *Instructions on other felonies*

Hoskins argues that the trial court erred in granting the State's instructions S-6, S-7, S-8, and S-9, in that they instructed the jury as to other crimes committed by the defendant for which he had not been charged. He also argues that the instructions were in conflict with other instructions and given without any cautionary or limiting instructions.

The instructions were definitions of the crimes named in the instruction on felony murder. Having already determined that it was proper to instruct on felony murder, we conclude that the instruction necessarily requires the jury to understand the elements of the felonies in order for it to determine whether Hoskins was guilty. The instructions were supported by the evidence, and we find that the judge properly granted them.

### III. *Improper prosecutor comment*

Hoskins argues that the trial judge erred in not granting him a mistrial during cross- examination of the defendant when the prosecutor stated, "Well happy birthday, do you realize that you just confessed to capital murder?" The trial judge sustained the defendant's objection to the statement and ordered the jury to disregard it, but the judge denied defendant's motion for a mistrial. Hoskins argues on appeal that he was not on trial for capital murder, and that the statement was improper, highly prejudicial, and denied him of his right to a fair trial.

It is a settled rule in this state that a mistrial is reserved for those few instances where the court can take no action which would sufficiently cure improper occurrences inside the courtroom. *Walker v. State*, 671 So.2d 581, 621 (Miss. 1996). In *Walker*, the court stated:

Elementary to all trial proceedings is the proposition that the occurrence of any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial. However it is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the mind of the jurors. The jury is presumed to have followed the directions of the trial judge. *Davis v. State*, 530 So. 2d 694, 697 (Miss. 1988).

*Id.*

While the prosecutor's comment should not have been made, we assume that the jury followed the judge's direction and disregarded the statement. The prejudice against the defendant was cured by the judge's admonishment, and the denial of a mistrial was proper.

### IV. *Hearsay evidence*

Hoskins argues that the jury should have been allowed to hear a statement previously given by Debreco Tims, who could not be found for trial and who allegedly saw someone else shoot Harrison. Hoskins argues that because Tims was unavailable, the statement should have been allowed under M.R.E. 804(b)(5). In the alternative, Hoskins argues he should have been granted a continuance to locate the witness to testify at trial.

We address the continuance question first. Unless there is a reasonable expectation that a witness will be found, the trial court does not abuse its discretion in denying a continuance in order to search for him. *See Bynum v. State*, 76 So.2d 821 (1955). Both State and defense investigators had searched diligently for Tims to no avail. Thus a continuance would likely have availed nothing.

As to admitting the hearsay statement, Hoskins relies upon Rule of Evidence 804(b)(5). This is the catch-all or residual exception to the hearsay rule and is identical to its counterpart Rule 803(24) in its language and intent. *See* M.R.E. 804(b)(5) cmt. Before admitting hearsay under these rules, the judge must find (1) that there are equivalent circumstantial guarantees of trustworthiness as the other exceptions, (2) that the statement is offered as a material fact, (3) that the statement is more probative on the point for which it is offered than is any other evidence available through reasonable efforts and (4) that the purposes of the rules of evidence and the interests of justice will best be served by admitting the statement into evidence. *Parker v. State*, 606 So. 2d 1132, 1137 (Miss. 1992). In this case, the hearsay testimony by Tims lacked the necessary circumstantial guarantees of trustworthiness. Tims had been in jail with Hoskins when Tims surfaced as a witness to the shooting. He gave no details of the shooting and only claimed that he was an eyewitness and saw someone besides Hoskins shoot Harrison. Tims had disappeared and could not be found for trial. The judge properly excluded the testimony as inadmissible under the catch-all exception.

## V. *Youth Court Records*

Hoskins argues that the trial court erred in allowing evidence of his youth court record. On cross examination of a police officer, the defense attorney asked, "Did you know at that time that Hoskins had just turned 14 years old?" The officer answered, "Yes, sir." The defense attorney asked "How did you know that?" The officer answered that he pulled Hoskins's rap sheet before he obtained a warrant so he knew his address, age, height, and weight from the juvenile arrest report.

After the officer gave his answer, Hoskins asked for a conference with the judge outside the presence of the jury, during which the defendant objected to the witness testifying as to Hoskins's juvenile record. The court noted that the witness had answered the attorney's question, and asked the Court the prosecutor to tell his witnesses to refrain from referring to the defendant's juvenile record. Hoskins cites no further mention of Hoskins's juvenile record nor any occasion in which the prosecutor attempted to use the juvenile adjudications against him.

Even though evidence of juvenile adjudications is generally not admissible under Mississippi Rule of Evidence 609(d), the defense counsel asked a question that with reasonable foreseeability would have been answered by reference to Hoskins's prior record. Hoskins refers to the experience of the witness and suggests the officer knew better than to refer even indirectly to Hoskins's criminal record. The witness presumably was no more experienced than defense counsel on such matters, and perhaps the question should not have been asked.

The reference to the prior record was a brief, and was a logical, and unforced response to a question posed by defense counsel, and consequently no error occurred.

## VI. *Lesser-included offense instruction*

Hoskins argues that the trial court erred in refusing to grant defendant's requested lesser- included offense instruction of manslaughter. The instruction at issue would have instructed the jury of manslaughter based on the theory that Hoskins was engaged in the misdemeanor of petit larceny of $10 and not a felony.

In order for Hoskins to have been entitled to a lesser-included offense instruction, he must show evidence in the record from which a jury could, other than by mere surmise, find him not guilty of the crime with which he was charged and at the same time, find him guilty of a lesser-included offense. *Toliver v. State*, 600 So. 2d 186, 192 (Miss. 1992). We find no evidence in the record to support a finding that Hoskins was engaged in committing larceny. Hoskins was attempting to seize property from Harrison's person. Whether Hoskins was armed or unarmed, this was robbery regardless of the value of the property. The trial court properly refused this instruction.

## VII. *Miscellaneous instructions*

Hoskins argues that the trial court erred in refusing to grant the defendant's requested jury instructions D-4, D-6, and D-8, and argues that they were proper and not covered by other instructions. We will discuss each in turn.

Instruction D-4 was a two theory instruction which stated that the jury was to resolve every question of fact susceptible of two interpretations in favor of the defendant.

The Mississippi Supreme Court has held on numerous occasions that it is only in cases consisting entirely of circumstantial evidence that an instruction must be given which requires the jury to resolve, in favor of the accused, doubt over circumstances susceptible of two interpretations. *Petti v. State*, 666 So.2d 754, 756 (Miss. 1995). The evidence is purely circumstantial where there was no confession and no eyewitnesses. *Parker v. State*, 606 So. 2d 1132, 1140 (Miss. 1992). In this case, there was both a confession and an eyewitness. The instruction was properly denied.

Instruction D-6 proposed to tell the jury that in reviewing the identification of the defendant, the jury could take into consideration the witness's capacity for memory and for observation, his familiarity with the defendant, and any other matters in evidence. Hoskins argues that the instruction was necessary to tell the jury of their duty to look at all evidence. We find that this was an eyewitness cautionary instruction that commented on particular testimony, and was properly refused.

Instruction D-8 instructed jurors that if they believed that the alleged confession was not true or was made under the influence of hope or fear, then they could take that into account when determining what weight attached to the evidence. Hoskins argues that this instruction was necessary to give the jury guidance as to what weight to be given the confession. We find the jury was adequately instructed on its duty to weigh the evidence, and this instruction was not proper.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.**

**MCMILLIN, P.J., NOT PARTICIPATING.**