# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00640-SCT

*ALVIN JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/22/2001 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DARNELL FELTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/14/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Alvin Jones (Jones) was indicted for murder under Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2000) for the killing of Tracy Marshall and two counts of aggravated assault with a deadly weapon under Miss. Code. Ann. § 97-3-7(2) (Rev. 2000) for gunshot injuries to Glenn and Curtis Marshall. A jury trial was held before the Honorable Kenneth L. Thomas of the Coahoma County Circuit Court. Jones was convicted of the lesser-included charge of manslaughter and sentenced to 17 years in the custody of the Mississippi Department of Corrections. Jones appeals asserting that (1) Miss. Code Ann. § 99-7-37 (Rev. 2000) violates his constitutional right to the nature and notice of the charge because it does not require the indictment to specify the manner or means of the murder charged; (2) the circuit court committed

cumulative reversible error in its evidentiary rulings; and (3) the manslaughter verdict was not supported by sufficient evidence and was against the overwhelming weight of the evidence. We affirm.

## FACTS

¶2. Jones was indicted for murder and two counts of aggravated assault following a shooting incident at a night club on the evening of June 5, 2000. The shooting resulted in the death of Tracy Marshall (Tracy) and injuries to Tracy's brothers, Glenn and Curtis Marshall (Glenn and Curtis). A physical fight outside of the club that night between Jones's sister, Trina Jones (Trina),[1] and Curtis precipitated the manslaughter now the subject of this appeal. The record indicates that numerous witnesses including Tracy and Glenn gathered outside to watch the couple fight. Many of them later provided statements to Investigator William Baker that night and testified at the trial.

¶3. Jones and his mother, also Trina's mother, were also out that night and decided to go by the club. They arrived during the fight. Jones had a gun in his car and after much mayhem was seen firing two or three shots into the air in response to seeing his sister and Curtis fighting. The record reveals that when Jones fired the shots into the air, Tracy, Curtis and Glenn "swarmed" him. Witnesses confirmed that Tracy attacked Jones, immediately after which Jones shot him. These witnesses also indicated that Jones was actually free from Tracy's grasp *before* Jones shot him. Witnesses also claimed that Jones fired several successive shots which ultimately led to the gunshot injuries to Glenn and Curtis. Glenn was shot in the hip, Curtis in the arm. They were treated for their injuries and survived. Tracy died from a single gunshot wound to the chest.

---

[1] Jones, the State, and witnesses refer to "Trina" as either "Catrina" or "Natrina" or "Trina". To avoid confusion, we reference to her as "Trina," apparently a nickname.

¶4.     At the conclusion of trial, the jury was instructed on murder, manslaughter and self-defense. The jury convicted Jones of manslaughter. Jones moved for judgment notwithstanding the verdict (JNOV) or for a new trial arguing that (1) the court erred in refusing to quash the murder count of the indictment because it failed to specify the means or manner in which Jones allegedly caused the death of Tracy Marshall and as such violated Jones's Sixth and Fourteenth Amendment rights; (2) there was no credible substantial evidence in support of the jury's manslaughter verdict; and (3) the verdict was against the overwhelming weight of the evidence.  The motion was denied, and Jones appeals.

## LAW AND ANALYSIS

**I.      Does Miss. Code Ann. § 99-7-37 violate a murder defendant's constitutional notice rights by not requiring the murder indictment to contain specific overt acts indicating the manner in which and/or means by which the alleged murder occurred?**

¶5.     **Murder and Manslaughter**.

Section 99-7-37 reads as follows:

> In an indictment for homicide *it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused*, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased.  And it shall be sufficient  in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased, concluding in all cases as required by the constitution of this state.

Miss. Code. Ann. § 99-7-37 (Rev. 2000).  Accordingly, the murder count of the present indictment charged Jones as follows:

> Alvin Jones. . . of Coahoma County, Mississippi, on or about June 5, 2000, in the County and State aforesaid, and within the jurisdiction of this court did unlawfully, willfully and feloniously, without the authority of law, and with deliberate design to effect death, did kill and murder a human being, to wit: Tracy Marshall, contrary to

3

the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi. . . .

This count tracked the language of the murder statute, and, pursuant to Section 99-7-37 recited above did not allege the specific means by which or the specific manner in which Tracy's death occurred, for example "by shooting with a pistol."

¶6.	Jones moved to quash the indictment arguing Section 99-7-37 violated his constitutional rights to notice of the charge against him because it does not require the inclusion of a specific/overt act by which the murder was allegedly committed. In other words, Section 99-7-37 authorizes a murder indictment to allege an unlawful killing, but not how it happened, therefore disabling fair preparation of the defense of the charge. A full hearing was conducted on the motion, during which the trial court allowed the State to amend the indictment to allege "by shooting with a pistol." Following amendment, the motion was denied.

¶7.	Jones argues on appeal specifically that his notice of the means or manner of murder is a fundamental right, that the right for the grand jury to approve of the facts supporting the charge alleged in the indictment and the right of the Court to examine the face of the indictment for its sufficiency are unconstitutionally impinged by Section 99-7-37. Jones also argues that the complete exclusion of the manner or means of murder from the indictment is not narrowly tailored to satisfy a compelling state interest.

¶8.	Jones also argues that Section 99-7-37 is inconsistent with the prosecutor's duty to disprove self-defense beyond a reasonable doubt. Furthermore, it leaves unanswered "whether the prosecution presented sufficient facts to the grand jury in support of the elements of the charge, and the prosecution's obligation to negate self defense." Additionally, the face of the indictment prevents the circuit court from making the "facial determination from the indictment about the elements, about the negation of the accused's self

4

defense, and about the grand jury's factual determination in support of the elements and in support of the negation of the accused's self defense."

¶9.     We hold that these arguments are without merit. Specifically, under Mississippi law, we hold that the defense is not entitled to notice of specific overt acts charged to have caused a murder. Accordingly, the statute does not violate Jones's constitutional notice rights. Moreover, the record makes clear that Jones was not in any way prejudiced by the indictment in the preparation of his defense.

¶10.    The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right to notice of the nature and cause of an accusation against them. U.S. Const. amend VI. This guarantee is made applicable to the states by incorporation into the due process clause of the Fourteenth Amendment. *In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). Article 3, Section 26 of the Mississippi Constitution affords the accused the right to notice of the nature and cause of the accusation. Miss. Const. art. 3, §26.

¶11.    Since Article 3, Section 26 of the Mississippi Constitution is consistent with the mandates of the Sixth Amendment of the United States Constitution, we will address the issue under Mississippi law. Article 3, Section 26 reads as follows:

> In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed....

Miss Const. art. 3, § 26. As such, it is well-settled in this state that "[t]he right of the accused to be informed of the nature and cause of the accusation against him is essential to the preparation of his defense."

*Peterson v. State,* 671 So.2d 647, 655 (Miss. 1996). This Court has repeatedly made it "clear that the

5

ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Medina v. State,* 688 So.2d 727, 730 (Miss.1996). *See also Gray v. State,* 728 So.2d 36 (Miss. 1998); *Allman v. State*, 571 So.2d 244 (Miss. 1990).

¶12.    Generally, whether an indictment in the language of the statute is sufficient,[2] or whether other words or acts are necessary to properly charge the commission of a crime is dependent upon the nature of the offense and the terms in which it is described by the statute. If the statute fully and clearly defines the offense, the language of the statute is sufficient to provide notice of the crime charged. *Johnson v. State,* 475 So.2d 1136, 1139 (Miss. 1985) (citing *Jackson v. State*, 420 So.2d 1045, 1046 (Miss. 1982) (following numerous cases cited therein)).

¶13.    We have repeatedly held that the manner or means employed in the commission of a crime need not be averred. *State v. Labella,* 232 So.2d 354, 356 (Miss. 1970) (citing 42 C.J.S. *Indictments and Informations* § 131, p. 1023 (1944) (neither do matters of evidence need averment, nor those of defense negation (citing 42 C.J.S. *Indictments and Informations* 15, 116, p. 996 (1944))); *Sessum v. State,* 221 So.2d 368, 370 (Miss. 1969) (Indictment did not have to set forth manner in which or means by which death of deceased was caused; it was sufficient to charge murder in the proper terms, whether it was a premeditated killing or a homicide resulting from the commission of a crime of violence; the state's instructions could properly set forth both theories of murder); *Talbert v. State,* 172 Miss. 243, 159 So.

---

[2]The sufficiency of an indictment is determined by Uniform Rules of Circuit and County Court Practice 7.06. Rule 7.06 enumerates several items that must be included in an indictment, and requires that the indictment state the essential facts constituting the offense charged and fully notify the defendant of the nature and cause of the accusation. URCCC 7.06; *Peterson v. State,* 671 So.2d 647, 654-55 (Miss. 1996). The present indictment satisfies all of the URCCC requirements. Thus, no Rule 7.06 issue was raised.

549, 551 (1935) (indictment in language of murder statute need not set forth manner and details of homicide; manner or means statute was intended to relieve the pleader of the necessity of setting forth in an indictment the manner and details of a homicide); *Williams v. State*, 161 Miss. 406, 137 So. 106 (1931) (manslaughter indictment charging culpable negligence held not defective due to not having set forth conduct constituting culpable negligence).

¶14.    Additionally, we find *Mackbee v. State*, 575 So.2d 16 (Miss. 1990), instructive.   One  issue in *Mackbee* was whether the  capital murder indictment, which did not allege an overt act/element constituting the underlying crime of attempted robbery or robbery, gave the defendant  sufficient notice of the nature and the cause of the charges against him. *Id.* at 34.  The indictment alleged that the murder was committed while Mackbee was "engaged in the commission of the crime of robbery...contrary to and in violation of § 97-3-19(2)(e) of the Mississippi Code of 1972," which is the statutory provision for capital murder. Thus, the indictment complied with the capital murder statute.  575 So.2d 2d at 34 (citing *Bullock v. State*, 391 So.2d 601, 606 (Miss. 1980); *Bell v. State,* 360 So.2d 1206, 1208-09 (Miss.1978)).


¶15.    Nonetheless, Mackbee argued that the indictment was void for failure to specify overt facts committed during the course of *the robbery*.  This Court  held that even though the indictment did not expressly specify overt acts committed during the robbery, the indictment adequately informed the defendant of the underlying robbery by setting forth the applicable section and subsection defining robbery. *Id. See also Gray v. State*, 728 So.2d at 70 (Defendant failed to demonstrate prejudice by the indictment's exclusion of the elements of the underlying felony which elevated the murder charge to capital

7

murder; it is not necessary to specifically set forth the elements of the underlying felony used to elevate the crime to capital murder).

¶16. Likewise, in *Sessum v. State,* this Court held that it is sufficient to charge murder in the language of the murder statute, whether it was a premeditated killing or a homicide resulting from the commission of the crime of arson. 221 So.2d at 270. The *Sessum* Court reasoned that "the State's *instructions* could properly set forth both theories of murder, which reaffirmed our holding in *Carrol v. State,* 183 Miss. 1, 183 So. 703 (1938), that such was justified because any facts which evidence murder or manslaughter may be introduced at trial. *See, e.g., Neighbors v. State,* 361 So.2d 345 (Miss.1978). Indeed, in *Carrol v. State,* we held that the predecessor to Section 99-7-37 covers all homicides, both statutory and at common law, and under an indictment drawn in accordance with the statute, any facts that evidence murder or manslaughter may be introduced during the trial to prove the State's case.

¶17. It is enough, therefore, that the accused be notified that the charge is for an unlawful killing of a particular person at a particular time or on a particular date, unless the offense cannot be charged adequately without the inclusion of a specific manner or means of death. The present indictment sufficiently notified Jones of that charge for which he needed to prepare his defense, the unlawful killing of Tracy Marshall on the night of June 5, 2000, at the nightclub.

¶18. Ultimately, at the hearing on the motion to quash in the present case the judge ruled the indictment amendable as to the means of death, finding that the issue was one of form and not substance. Accordingly, the State amended the indictment to reflect that the means of death was "by shooting with a pistol."

¶19.   "The test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether . . .a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance." *Medina v. State*, 688 So.2d at 730. Jones does not demonstrate such prejudice or harm on appeal.  Instead, he argues that the exclusion of the manner in which or means by which the murder is caused in the indictment is unconstitutional.  We disagree and hold that Section 99-7-37 does not violate a murder defendant's constitutional notice rights by permitting the exclusion from the indictment of the manner and/or means employed in the perpetration of the offense of murder. Thus, the trial court did not err in overruling the motion to quash the indictment on these grounds.

## II.      Did the trial court err in excluding Glenn Marshall's purported prior inconsistent statement?

¶20.   During the early morning hours of June 6, 2000, State's witness Glenn Marshall (Glenn), who had been shot in the hip, was treated by Dr. William M. Barr.  Dr. Barr's medical record reported that Glenn stated his brother Tracy Marshall (Tracy) had gone on a "rampage." When Glenn took the stand to testify, defense counsel inquired about Glenn having told Dr. Barr about the "rampage."  Glenn repeatedly denied making the statement.  Defense counsel sought to introduce the medical record and have Glenn read from it. The State objected on the basis of hearsay, untrustworthiness, and lack of proper predicate for the entry of a medical record/prior inconsistent statement. The judge denied the record's admission.

¶21.   Jones argues that the trial court erred by not admitting this as a  prior inconsistent statement or under the medical records exception the rule against hearsay. Specifically, he argues that the refusal of the

court to allow the statement hindered his ability to impeach Glenn's credibility, which would have assisted Jones's self-defense claim. "All the impeachment required was for the defense to hand Dr. Barr's report to Glenn and ask Glenn to either deny or admit whether the report correctly reflected his statement to Dr. Barr." Upon examination of the record we conclude that the judge could have allowed the record for impeachment purposes rather than as substantive evidence.

¶22. Jones argues that the medical report prepared by Dr. Barr qualifies as a hearsay exception under Mississippi Rules of Evidence 803(4) regarding "Statements for Purposes of Medical Diagnosis or Treatment;" therefore under Rule 806, Glenn's statements can be used to attack his credibility as they are prior inconsistent statements. As will be explained, this argument must fail.

¶23. Without question, under Rule 801, defining hearsay, the statements made by Glenn to Dr. Barr and noted in the medical records are hearsay statements which require an exception. Rule 803(4) provides a hearsay exception for "Statements for Purpose of Medical Diagnosis or Treatment." Rule 803(4) specifically provides that:

> Statements made **for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment,** regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health. . .

M.R.E. 803(4) (emphasis added). The comment to Rule 803(4) provides, in relevant part, that:

> Rule 803(4) represents a deviation from previous Mississippi practice in three significant ways. First, Rule 803(4) permits statements of past symptoms as well as present symptoms. **Second, the rule allows for statements which relate to the source or cause of the medical problem whereas Mississippi courts formerly disallowed such statements.** *See Field v. State*, 57 Miss. 474 (1879) and *Mississippi Cent. R.R.Co. v. Turnage*, 95 Miss. 854, 49 So. 840 (1909), for

10

pre-rule Mississippi law. **While statements about cause are permissible, statements concerning fault are still excluded**.

M.R.E. 803 cmt. (emphasis added). As is clearly stated in the Comment, "statements made about cause are permissible, [however] **statements concerning fault are still excluded**." M.R.E. 803 cmt. (emphasis added). The statement made by Glenn to Dr. Barr regarding Tracy's "rampage" concerns fault and is not a statement for the purposes of "medical diagnosis or treatment." As such, these statements were correctly excluded as hearsay.

¶24. Furthermore, even if we were to assume that Dr. Barr's medical report qualified under Rule 803(4) as a hearsay exception, Rule 803(4) still provides the trial judge with considerable discretion in its admissibility. The relevant part of Rule 803(4) provides that "regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their untrustworthiness," then the trial judge may still exclude the statements. M.R.E. 803(4). The Comment to Rule 803 notes that " the rule, by requiring the judge to find trustworthiness, gives the trial judge greater discretion," in determining the admissibility of statements made during medical treatment. M.R.E. 803 cmt.

¶25. Lastly, under Rule 806 concerning the admissibility of a hearsay statement as a prior inconsistent statement for the purposes of attacking a witnesses credibility, does not qualify the medical report containing Glenn's statements as admissible. Under Rule 805 not only must Dr. Barr's report containing Glenn's statement meet a hearsay exception; but also Glenn's statement therein must also meet a hearsay exception. As already discussed above, Dr. Barr's medical report does not meet the hearsay exception provided in Rule 803(4) or any other hearsay exception contained in the Rules of Evidence. As such,

11

without even getting to whether Glenn's statement qualifies within a hearsay exception; we can dispose of Jones's argument on this issue since Dr. Barr's report does not qualify under a hearsay exception.

¶26. For the above reasons, we affirm the trial court on this issue.

**III. Did the trial court err during the testimony of the State's witnesses, Investigator William Baker and eyewitness Dennis Foster?**

¶27. Jones argues that the trial court erred in allowing Investigator William Baker (Baker) to testify about his conclusions from interviewing eyewitnesses. He also argues that the trial court erred in allowing the prosecution to discredit Dennis Foster's (Foster) testimony regarding his pre-trial statement, asserting that this interfered with his defense since Foster testified that he felt Jones was in danger when he fired his gun at Tracy. The record reveals that defense counsel failed to raise proper objections during the testimony of both Dennis Foster and Investigator Baker. Nor were these issues raised in the motion for a JNOV or a new trial. Therefore, these arguments are waived.

¶28. Absent a contemporaneous objection at the trial level as to a particular issue, that issue is waived on appeal. *Smith v. State,* 724 So.2d 280 (Miss.1998); *Whigham v. State,* 611 So.2d 988, 995 (Miss. 1992). Indeed, "[i]t is, of course, incumbent upon counsel at trial to make a contemporary objection . . . , and also in his motion for a new trial, failing in which the error is waived." *Id. See also Dennis v. State,* 555 So. 2d 679 (Miss. 1989); *Dunaway v. State,* 551 So. 2d 162,164 (Miss. 1989).

¶29. The trial court sustained an objection to allowing Baker's testimony about what the witnesses *told him* they saw during the shooting. No objection was raised about Baker's conclusions regarding Jones's assertion of self-defense as reflected by the witness statements taken by Baker. Likewise, there was no

objection to the State's questioning of Foster regarding his inability to say in his pre-trial statement that which he said during his trial testimony.

¶30. The record reveals that Baker testified to asking witnesses about what they saw occur on the night of the shooting. He wrote down their individual statements, read them back to them, and allowed them to make any corrections before they signed them. Baker testified that the witnesses confirmed their statements. Baker summarized the statements at trial, stating that none of the witnesses saw anyone else armed, including Tracy Marshall:

> Q. **Did anybody tell you any facts that were included in their statements that led you to the conclusion or the possibility of self-defense? Did anybody mention any weapon?**
>
> A. **No sir.**
>
> Q. **Did anybody mention that Alvin Jones appeared to them to be threatened in any violent sort of way?**
>
> A. **No sir.**
>
> Q. Did anybody mention that there was an any excessive violence being committed toward Alvin?
>
> A. No, sir. There was an argument that had ensued, but that was it.
>
> Q. And these, you talked to all these witnesses within ten days of the incident itself?
>
> A. Yes, sir.

(emphasis added).

¶31. As discussed, counsel for Jones did not object to Baker's testimony about his conclusions. Nor was this issue raised in Jones's motion for JNOV or a new trial. Therefore, the judge was not allowed an opportunity to rule; and therefore, the argument is waived on appeal.

¶32. The record also shows that the objection raised during the testimony of Dennis Foster was on the ground of a discovery violation. There was no objection to the State's questioning of Foster regarding his

13

failure to mention in his pre-trial statements that he thought Jones was in any danger when he fired the shot that killed Tracy Marshall. The argument regarding Foster's testimony is likewise waived.

### IV. Was the manslaughter verdict supported by insufficient evidence or against the overwhelming weight of the evidence?

¶33. Jones argues on appeal that there was insufficient evidence to support the manslaughter verdict or that the verdict was against the overwhelming weight of the evidence. These arguments are without merit.

### a. Sufficiency of the Evidence

¶34. Under a sufficiency of the evidence review, "our authority to interfere with the jury's verdict is quite limited." ***Benson v. State***, 551 So.2d 188, 193 (Miss. 1989). "[I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb." ***Id.*** Factual disputes are not sufficient to mandate a new trial, but rather, are properly resolved by the jury. ***Id***. The prosecution must be given the benefit of all favorable inferences that can reasonably be drawn from the evidence. ***Id.***

¶35. Specifically, when a defendant attacks the sufficiency of the evidence, he is alleging that there is no competent evidence introduced on one or more of the elements of the crime charged. "In determining whether that is true, a court is to consider all credible evidence in the light most favorable to the verdict, also making such appropriate evidentiary inferences as are consistent with the verdict" ***Drake v. State***, 800 So.2d 508, 516 (Miss. 2001). "We may reverse only where, with respect to one or more of the

elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." ***Id.***

¶36.    In the present case, Jones was charged with murder pursuant to the language of Section 97-3-19(1).  At trial numerous eyewitnesses testified, and the jury was instructed as follows on the elements:

> The defendant, Alvin Jones, has been charged in a three count indictment with the crime of murder two [sic] counts of aggravated assault.  Under Count I of the indictment, if you believe from the evidence in this case beyond a reasonable doubt that: Number 1, on or about June 5th, 2000, Tracy Marshall was a living person; and Number 2, that Alvin Jones did willfully, feloniously and without authority of law, not in necessary self defense or defense of another, and of his deliberate design to affect death did kill and murder Tracy Marshall, then you shall find the defendant guilty of murder in Count I.  If the state has failed to prove any one or more of the above listed elements, then you shall find the defendant not guilty in Count I'. . . .The Court instructs the jury that to make the murder or manslaughter justifiable on the grounds of self defense, the danger of Alvin Jones must have been either actual, present and urgent from Tracy Marshall. . . .If you fail to find the defendant, Alvin Jones, guilty of the felony crime of murder, then you should continue with your deliberations to consider the elements of the felony crime of manslaughter. If you find fro the credible evidence in this case beyond a reasonable doubt that the deceased Tracy Marshall was a living person and that the defendant, Alvin Jones, did kill Tracy Marshall without deliberate design and in the heat of passion, but in a cruel or unusual manner or by the use of a dangerous weapon, not in necessary self defense, and without authority of law, then you shall find the defendant, Alvin Jones, guilty of manslaughter.

Upon these instructions, the jury found Jones guilty of manslaughter.   The record makes clear that this verdict is supported by an abundance of substantial, credible evidence and should therefore be affirmed. Indeed, the evidence provided sufficient credible, corroborated eyewitness testimony that Jones had not acted in necessary self-defense when he killed Tracy Marshall, since Tracy had retreated. The jury found rather that Jones acted in the heat of passion.

¶37.    Jones arrived at the scene of the nightclub with a gun. He admitted to bringing the gun to the scene although he did not admit in his pre-trial statement to being the gunman.  The evidence at trial indicated that the casings on the ground were from the same gun, and from .380 caliber projectiles, that Tracy died

from a gunshot wound to the chest, and that the gunshot wound was created by the same gun that left the casings. No eyewitness to the killing saw any other person with a gun. No witness saw Tracy Marshall with a gun or any other weapon, nor was any weapon found near him. Three witnesses specifically testified that they saw Jones shoot Tracy. While testimony indicated that Tracy assailed Jones, there was corroborated testimony that Jones was not being held, threatened or being harmed in any way when Tracy was shot. Jones was no longer under attack. In other words, the evidence at trial supports the conclusion that Jones did not have to shoot to protect himself.

### b. *Weight of the evidence*

¶38. In determining whether a jury verdict is against the weight of the evidence, this Court accepts as true the evidence which supports the verdict and will reverse only when convinced that the trial court abused its discretion in failing to grant a new trial. *Nicolaou v. State,* 612 So.2d 1080, 1083 (Miss. 1992). Any factual disputes are properly resolved by the jury and do not mandate a new trial. *Smiley v. State* , 815 So.2d 1140, 1145 (Miss. 2002); *Bailey v. State*, 729 So.2d 1255, 1263 (Miss. 1999).

¶39. We have reviewed the evidence of record and do not find evidence contrary to the verdict. Indeed, viewing as true the evidence which supports the jury's verdict, it cannot be said that the verdict was so contrary to the overwhelming weight of the evidence that allowing it to stand would result in "an unconscionable injustice." *Wetz v. State,* 503 So.2d 803, 812 (Miss. 1987).

### CONCLUSION

¶40. Mississippi authority establishes that Section 99-7-37 of the Mississippi Code does not violate a defendant's constitutional rights to notice. The trial judge did not err in its evidentiary rulings regarding

Glenn Marshall's testimony. The defense did not preserve error for appeal regarding the evidentiary rulings pertinent to Investigator Baker's and eyewitness Dennis Foster's testimonies; thus, these issues are waived. And finally, the verdict was supported by sufficient, substantial, and credible evidence, and was not against the overwhelming weight of the evidence. Ultimately, there is no reversible error on appeal. Therefore, the trial court's judgment is affirmed.

¶41. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF SEVENTEEN (17) YEARS IN AN INSTITUTION UNDER THE SUPERVISION AND CONTROL OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, EASLEY AND GRAVES, JJ., CONCUR. COBB AND CARLSON, JJ., CONCUR IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**